UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AIRIS INTERNATIONAL HOLDINGS, LLC and RONALD D. FACTOR, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-3525 |
| | § | |
| DANIEL NATHAN WEST, | § | |
| BRUCE PHILLIPS, *and* | § | |
| HARSHMAN PHILLIPS & COMPANY, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendants Bruce Phillips and Phillips Harshman & Company, LLC's ("Phillips defendants") motion to dismiss for lack of personal jurisdiction. Dkt. 29. After considering the motion, response, and applicable law, the court finds that the motion to dismiss should be DENIED.

**I. BACKGROUND**

Plaintiff Airis International Holdings, LLC ("Airis") is an aviation development company that offers master planning, facility planning, project management, marketing, and property management for aviation facilities. Dkt. 18 ¶ 8. Airis's sole manager and president is plaintiff Ronald D. Factor. Defendant Daniel Nathan West worked for Airis as controller and Chief Financial Officer from June 1999 to at least December of 2012. *Id.* ¶ 9, 10. Airis hired the Phillips defendants to provide accounting services and financial advice in approximately 1996.

Plaintiffs allege that over the course of seven years, from 2005 to 2012, West transferred at least $3.6M of Airis company money to his own business ventures, including real estate investments

and his own accounting firm, Westtree Financial. *Id.* ¶ 14, 16, 18.  According to plaintiffs, Factor did not authorize or know about the alleged transfers.  During the same time frame, plaintiffs claim the Phillips defendants had suspicions about West's allegedly nefarious transfers, yet did not inform Factor or Airis management about its concerns until December 11, 2012, the first time plaintiffs learned of the alleged wrongdoing. *Id.* ¶ 13, 14.  Plaintiffs claim that when the Phillips Defendants prepared Airis's annual financial statements, they negligently labeled the suspicious transfers as "Assets [d]ue from [Airis] members and affiliates," though they knew West was an employee, not a member or affiliate. *Id.* ¶ 15.  Plaintiffs claim that the company has lost $3.6 million because of West's actions and the Phillips Defendants' negligence. *Id.* ¶ 15.  .

On December 10, 2014, the plaintiffs brought this suit alleging claims of theft, fraud, breach of fiduciary duty, and conversion against West, and a negligence claim against the Phillips Defendants. The Phillips Defendants filed this motion to dismiss for lack of personal jurisdiction, and plaintiffs have responded.

## II. LEGAL STANDARD

A court must dismiss an action when it lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing personal jurisdiction over the nonresident. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  When a district court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdiction, and the court may consider the entire contents of the record, including affidavits. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all

conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270–71 (5th Cir. 1983)). However, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

In a diversity action, a federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with due process under the U.S. Constitution. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). This two-step personal jurisdiction inquiry collapses into one federal due process analysis because the Texas long-arm statute extends to the limits of federal due process. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868 (1984)).

A plaintiff seeking to establish the court's personal jurisdiction over a nonresident defendant must show that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of 'fair play and substantial justice.'" *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)). Minimum contacts are established through the assertion of either general or specific jurisdiction. *Panda Brandywine*, 253 F.3d at 867. Specific jurisdiction refers to a suit "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n. 8. General jurisdiction refers to a suit which does

3

not arise from the nonresident's contacts with the forum, and is asserted only over defendants who maintain "continuous and systematic" contacts in a particular forum.  *Id.* at 415.

### III. ANALYSIS

#### A. Are there sufficient contacts?

In this case, plaintiffs rely on specific jurisdiction to show personal jurisdiction.  "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."  *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Helicopteros*, 466 U.S. at 414 n. 8).  Specific jurisdiction requires a plaintiff to show that:

> (1) there are sufficient (i.e., not "random fortuitous or attenuated") pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts. Once the plaintiff makes that showing, the defendant can then defeat the exercise of specific jurisdiction by showing (4) that it would fail the fairness test, i.e., that the balance of interest factors show that the exercise of jurisdiction would be unreasonable.

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221–22 (5th Cir. 2012) (quotation and citation omitted).

The Phillips Defendants argue that this court does not have personal jurisdiction over them because the complaint arises only from the yearly financial statements it prepared, which was done solely in Georgia.  Dkt. 29 at 2.  Because the complaint arises out of work done completely in Georgia, the Phillips Defendants contend, a Texas court does not have specific personal jurisdiction over them.  *Id.*  The Phillips Defendants go on to assert that although they did travel to Texas on two or three occasions to meet with the plaintiffs, the meetings were unrelated to the preparation of financial statements.  *Id.*

4

Plaintiffs respond that the Phillips Defendants performed general accounting services for the plaintiffs since approximately 1996, regularly handling financial matters involving the plaintiffs' assets, business entity structures, and tax planning, which included visits to Texas.  Dkt. 33 at 7, 9. Plaintiffs assert that the negligence extends beyond the annual financial statements to the various advice and consulting that was directed at plaintiffs by the Phillips Defendants in Texas.  *Id.* at 8. Plaintiffs explain that despite the Phillips Defendants' later-admitted suspicions about West's transfers, they attended meetings in Houston, Texas, where they advised plaintiffs on new business entity structures, tax planning, and other business matters for plaintiffs, yet never raised their concerns during those meetings.

The Plaintiffs have shown that the Phillips Defendants had pre-litigation connections with Texas.  By their own admission, the Phillips Defendants visited Texas two or three times to provide financial advice to the plaintiffs.  Dkt. 29 at 6.  The visits lasted one or two days at a time.  *Id.*  The visits all took place before litigation happened.  There was also correspondence via regular telephone calls and emails.  These contacts cannot be categorized as random, fortuitous, or attenuated.

Second, the Phillips Defendants purposefully established the connection.  The Phillips Defendants directed their annual statements and advice to Airis in Texas, knowing that the advice would be used in Texas.  The Phillips Defendants had not only been in the business relationship since 1996, but annual statements were prepared for use by the company, and regular meetings and communications were held where the Phillips Defendants provided advice to those in Texas for compensation.  *Id.* at 4–5.

Third, the plaintiffs' cause of action arises from the Phillips defendants' forum contacts.  The claim centers on the fact that the Phillips Defendants owed a duty to the plaintiffs as their accountant.

The complaint goes on to plead that "[t]he Phillips Defendants breached their duty to Plaintiffs by failing to notify Mr. Factor of West's transfers and by affirmatively mischaracterizing West's transfers such that Mr. Factor would not become aware of West's theft until seven (7) years after it began." *Id.* at 12.  This cause of action relates to contacts that were directed at, or at times occurred in, Texas.

Fourth, the exercise of personal jurisdiction by this court over the Phillips Defendants is not unreasonable given the relationship between the parties and the length of the relationship.  The Phillips Defendants have provided accounting services and advice to Airis,, a Texas company, for nearly twenty years.  And, Texas has an interest in ensuring that firms that provide accounting services to Texas businesses do so with care.

The court's conclusion is consistent with Fifth Circuit precedent on this issue.  In *Streber v. Hunter*, the Fifth Circuit affirmed a district court's ruling that personal jurisdiction existed over an attorney that resided in Louisiana who gave tax advice that he knew would be received by a Texas client.  221 F.3d 701, 718 (5th Cir. 2000) (asserting that *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1257 (5th Cir. 1994) also supported its decision because the court found that Texas had personal jurisdiction over a New York attorney who only performed work in New York because the attorney knew his tax opinion would be included in materials shipped to Texas).  In *Trinity Industries, Inc. v. Myers & Associates, Ltd.*, the Fifth Circuit found that a non-resident attorney had the requisite minimum contacts—beyond a mere attorney-client relationship—to establish personal jurisdiction in Texas: the attorney considered the plaintiff in the case a major client; the attorney's firm represented the plaintiff over the course of eight years and regularly counseled plaintiff on issues that were the subject of the lawsuit; the representation required regular mail and telephonic

6

communications with Texas and, on occasion, physical presence for meetings in Dallas; the attorney appeared on behalf of the plaintiff in court at times; and the firm billed the plaintiff in Texas and payment came from Texas.  31 F.3d 229, 230–31 (5th Cir. 1995).  These cases bear several similarities to the case at hand.

For these reasons, the court finds sufficient minimum contacts for personal jurisdiction over the defendants.

### B.  Could defendants have anticipated being required to litigate in Texas?

Once minimum contacts are established, the second prong of the due process test requires that the exercise of personal jurisdiction does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  To determine whether the exercise of jurisdiction is fair and reasonable, the court examines five factors: (1) the nonresident defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; (5) and the states' shared interests in furthering fundamental social policies. *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009). And, once a court is at this stage of consideration, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. 462, 477 (1985).  "It is rare to say the assertion [of personal jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th 1999). And, even if the burden to litigate out of state is significant, it is not alone dispositive. *See id.*

The Phillips Defendants argue that subjecting them to personal jurisdiction in Texas is unfair. Dkt. 29 at 7.  They continue that it is not only inconvenient for themselves, but that it would be more

convenient for Airis to litigate in Georgia as well.  *Id.*  The Phillips Defendants also assert that Georgia has a strong interest in policing the practice of accounting within the state, while Texas has little interest in overseeing Georgia accountants.  *Id.*  Finally, they assert that the interests of the interstate judicial system are best served by litigating the issues in Georgia because all parties have offices and relevant witnesses in Georgia.  *Id.*

Plaintiffs argue that defendants have not made a compelling showing that litigating the matter in Texas presents an unreasonable burden on them.  Dkt. 33 at 10.  Plaintiffs also argue that any burden on the Phillips Defendants of having to travel to Texas to litigate would be equally felt by forcing plaintiffs to litigate in Georgia.  *Id.* at 11.  Plaintiffs also point out that any inconvenience defendants claim cannot be described as so gravely difficult and inconvenient that defendants would be at an unfair and severe disadvantage.  *Id.*  And, plaintiffs assert, Texas has strong interests in adjudicating a suit involving a corporation with a principal place of business in Houston, and the Phillips Defendants have shown no evidence that Georgia's interest is any greater than that of Texas.

Given that minimum contacts exist and defendants cannot put forth more concrete or compelling reasons as to why it is unfair to have to defend their actions in Texas, the court believes that it does not offend traditional notions of fair play and substantial justice to maintain the lawsuit in Texas.

### III. CONCLUSION

Defendants' motion to dismiss for lack of personal jurisdiction (Dkt. 29) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on July 27, 2015.

_____
Gray H. Miller
United States District Judge

8